[Bridges v. McClendon.]

# Bridges *v.* McClendon.

| 56 | 327 |
|----|-----|
| 106 | 29 |
| 56 | 327 |
| 117 | 533 |
| 56 | 327 |
| 132 | 25 |

*Action on Note given for Purchase-Money of Land.*

1. *Conveyance of land adversely held.*—A conveyance of land which is at the time in the possession of a person claiming under a prior conveyance from the grantor, is inoperative and void as against him, and he may successfully resist an action at law by the subsequent grantee; but, if the land is not actually included in his deed, neither his possession under claim of title, nor the subsequent conveyance to another person, would prevent the grantor from recovering it by action against him.

2. *Abatement of purchase-money, on account of misrepresentation of boundaries.*—If the vendor of lands, while negotiating the sale, points out valuable lands as a part of the tract, which are in fact outside of its boundaries, the purchaser may claim an abatement of the purchase-money, to the extent of the damage caused by such misrepresentation, whether made though ignorance or by design; and this defense he may make at law, when sued for the purchase-money.

3. *Reformation of contract, on ground of mistake or fraud.*—A misrepresentation of the boundaries of a tract of land, made by mistake or by design, by an agent who was authorized to negotiate a sale on behalf of himself and the other joint owners, would not authorize a reformation of the conveyance as against the other joint owners, so as to include valuable lands outside of the tract, which were pointed out as a part of it, unless they either ratified or authorized the misrepresentation; and as against the agent himself, if he were the sole vendor, and made the misrepresentation through mistake, it is not certain that a reformation would be decreed, though the question is left undecided, not being presented by the record.

4. *Survey and diagram, and testimony of surveyor.*—A survey and diagram of land, made by a county surveyor, but without notice to "the opposite party," as required by the statute (Rev. Code, § 953), is not conclusive, nor even presumptive evidence against him; though the surveyor might testify as to his survey, exhibit the diagram, and give his opinion, founded on the survey, as to the boundaries.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. W. J. HARALSON.

This action was brought by Mrs. Jane Bridges against John H. McClendon, and was founded on the defendant's promissory note for $300, which was in these words : "By the 1st January, 1871, I promise to pay Charles F. Woods, trustee, &c., or bearer, three hundred dollars, part consideration for eighty acres of land this day purchased of him and others, this March 6th, 1868 ;" which was assigned to the plaintiff by indorsement. The defendant filed a special plea of set-off, alleging that the note was given for a part of the purchase-money of a tract of land, which he had bought from one Wiley Wood, who acted for himself, William M. Wood, and Charles F. Wood, to whom the land belonged

jointly; that said Wiley Wood, pending the negotiations for the sale, pointed out a parcel of valuable land, containing twenty-three acres, which he represented as included in the eighty-acre tract he was selling to defendant; that defendant relied on this representation, and was induced by it to make the contract; that said parcel of land was in fact not included in said eighty-acre tract, and was not embraced in the conveyance which said vendors afterwards executed to him; that he was put in possession of said parcel under his purchase, and continued in possession until he was dispossessed by a subsequent purchaser from said vendors; that said parcel of land was worth $25 per acre, while the lands actually conveyed to him were not worth more than $10 per acre, and that he was injured to the extent of the difference in value. This was the only plea, and issue was joined on it.

On the trial, as the bill of exceptions shows, the plaintiff having read in evidence the note and its assgnment, the defendant read in evidence the deposition of Thomas White, who was present at the negotiations between Wiley Wood and the defendant, and went over the land with them; and who testified to said Wood's statements as to the corners and boundaries of the land, including the disputed twenty-three acres, and as to the comparative value of said lands. The defendant then testified, as a witness for himself, to the facts set out in his special plea; stating that said twenty-three acres, which really lay on the west side of the eighty acres conveyed to him, were pointed out to him by said Wiley Wood as a part of the tract, and were included within the lines staked off by him; that said parcel was partly cleared, was worth $25 per acre, and there was a house on it; that he took possession of said parcel under his purchase, and made improvements, clearing, fencing, &c., until he was dispossessed, in May, 1870, by Garland Wood, who, having bought the adjoining eighty-acre tract from said vendors, or claiming under a subsequent purchase from them by his father, Thomas Wood, had the lines run again by the county surveyor, and claimed said parcel as a part of his tract, and dispossessed the defendant; and that the other twenty-three acres which, according to this new survey, were included in his tract, were wet, marshy, and worthless. He also exhibited his deed for the lands, which was dated March 6, 1868, recited as its consideration the payment of $1200, and conveyed a tract of land "containing eighty acres, being the west half of the north-east quarter, section six, township four, range six, east, less two acres off the east side of the north-west quarter." The defendant proved, also, by another witness, the declarations of said Wiley Wood, at the time of the

sale, that the house on the said twenty-three acres was on the lands which he had sold to defendant, and also the comparative value of the different parcels. The defendant also introduced as a witness F. B. Foster, who had been the county surveyor of said county for many years, and who testified that, "in May, 1870, at the request of Garland and Thomas Wood, he surveyed and run out the line of the west half of the north-east quarter and the north-west quarter of said section six; and ascertained on such survey that the defendant had in possession twenty-three acres of the north-west quarter of said section, and that the eastern boundary of the west half of the north-east quarter of said section lay further east than the line pointed out to the defendant by Wiley Wood as the section line of the lands sold him"; and the witness illustrated his testimony by a diagram which he had made, showing the boundary lines.

"This being all the evidence in the cause," the plaintiff asked the court, in writing, to charge the jury as follows:

"1. If Wiley Wood, acting for himself and others, sold defendant eighty acres of land, and pointed out the boundaries so as to include a parcel of twenty-three acres; and Wood and those for whom he acted owned the lands so pointed out, and made defendant a deed, which he accepted, under the belief that the lands therein described included said parcel of twenty-three acres; then, as against Wiley Wood and the persons for whom he acted, defendant acquired a good title to the lands, including said parcel of twenty-three acres, and they could not, by any sale and conveyance subsequently made, affect or impair the defendant's title.

"2. Any sale or conveyance of said twenty-three acres of land, made by Wiley Wood and others for whom he acted in the sale to defendant, to Garland Wood, or Thomas Wood, after the sale and conveyance to defendant, and while he was in possession of said twenty-three acres, claiming under the deed to him from Wiley Wood and others, was, as against said defendant, void, and could not be made the foundation of an action at law against him, for the recovery of said twenty-three acres.

"3. The defendant could not, on a survey made by the county surveyor, surrender the possession of said twenty-three acres of land, and claim an abatement of the purchase-money, or make any defense to this suit, because of such surrender: that such survey is not evidence against the plaintiff in this suit, unless she or her *assigns* (?) had notice of the time when it would be made; nor could such survey have been evidence against the defendant, if he did not have notice of the time when it would be made.

"4. If the jury find, from the evidence, that Wiley Wood and others sold a tract of land to defendant, and represented, as a part of it, a particular tract of twenty-three acres which they owned, and subsequently made him a deed, which he accepted, under the belief that the lands described in it included said parcel of twenty-three acres; and that defendant went into possession of said land, including said twenty-three acres; and further, that said Wiley Wood and others subsequently, while defendant was in possession of said lands, including said twenty-three acres, sold and conveyed to Garland Wood, or to Thomas Wood, lands adjoining those sold to defendant; and further, that on a survey made by the county surveyor, to ascertain the government lines, it was ascertained that said twenty-three acres was not within the eighty acres conveyed to defendant, as described by government survey: yet defendant had a good title to said twenty-three acres, and was entitled to hold it against Garland Wood or Thomas Wood, and could not have been lawfully dispossessed thereof by either of them; and that though Garland Wood may have entered on, and taken possession of said twenty-three acres, he was a trespasser, and such entry and possession did not deprive the defendant of his right to said land, but he is entitled to recover the same of said Garland Wood, and cannot defend against this suit because of such entry and possession; and that the jury, if they find the facts to be as herein stated, then must find for the plaintiff.

"5. That the plaintiff is entitled to recover, if the jury believe the facts, that the note sued on was given for a tract of land sold to defendant by Wiley Wood; and that defendant went into possession of the land sold; and that Wiley Wood and others, for whom he acted, made a deed conveying the land to defendant; and that defendant accepted said deed, believing it conveyed the lands he had purchased; and that when the lands were sold, a parcel of twenty-three acres, lying on the west side of said tract, was represented by said Wiley Wood as included in the tract sold to defendant; and that defendant, when he accepted said deed, believed that said twenty-three acres were embraced in the lands described in the deed; and the facts are further, that while defendant was in possession of the land, and after the making of said deed and its acceptance by defendant, and while defendant was claiming the same under his said purchase and deed, Garland Wood and Thomas Wood, one or both, purchased lands from Wiley Wood and others, and caused a survey to be made, and then claimed said twenty-three acres, and entered on it, and dispossessed defendant of it,—then, these

[Bridges v. McClendon.]

facts do not constitute a defense to this action, and they must find for the plaintiff.

"6. If the jury find, from the evidence, that the land in controversy was intended to be embraced in the deed from Wiley Wood and others to defendant, and the parties thought it was so embraced, and, in that belief, defendant went into possession of it under the deed, and was so in possession, claiming it under said deed, when the subsequent deed was made to Garland Wood and others; in that case, the deed to Garland Wood was void, and conveyed no title as against the defendant, and the defendant's voluntary surrender of the possession to Garland Wood does not entitle him to resist a recovery on this note, on the ground of failure of consideration.

"7. If the jury find, from the evidence, that the land in controversy was included in the deed to defendant, the subsequent deed for the same land to Garland Wood, made while defendant was in possession under said deed, would not divest his title, and the title is still in him, as against Garland Wood, and he is liable on the note; and further, that he could now recover the land from Garland Wood.

"8. If the jury believe the evidence, the plaintiff is entitled to recover the amount of the note, with interest."

The refusal of each of these charges is now assigned as error.

J. B. MOORE, with whom was L. P. WALKER, for the appellant.—The facts are undisputed, that Wiley Wood intended to sell, and McClendon intended to buy, the twenty-three acres in controversy; that said parcel was, by the survey made by the parties themselves, included in the tract sold and conveyed to McClendon; that McClendon was put in possession, and continued in peaceable and undisturbed possession, until he was dispossessed by Garland Wood, or voluntarily surrendered the possession to him. The land had always been considered and treated as a part of the tract sold and conveyed to McClendon; and there is no evidence that it was not so included, except the *ex-parte* survey made by the county surveyor, at the instance of Garland Wood, which was not binding on the defendant, because he had no notice of it. There is not the slightest evidence of fraud in the transaction. If the said parcel is not in fact included in the deed to the defendant, the parties acted under a mutual mistake as to that fact, and supposed that it was; and if it is not so included, the defendant has never made application to have his deed reformed, so as to correct the mistake. The defendant being in adverse possession, claiming under his

purchase, the subsequent deed to Garland Wood was void; and if the defendant surrendered the possession to him, he can claim no advantage from that act. He is still to be regarded as in possession, and cannot resist the payment of the note for the purchase-money. In support of these propositions, the following authorities are relied on : *Abernathy v. Boazman*, 24 Ala. 189 ; *Williams v. Mitchell*, 30 Ala. 299 ; *Black v. Stone & Co.*, 33 Ala. 327 ; *Beck v. Simmons*, 7 Ala. 71 ; *Long v. Brown*, 4 Ala. 622.

WATTS & SONS, *contra*.—Thee vidence fully sustained the facts set up in the special plea, and they constituted a good defense to the action. There was a misrepresentation of the boundary line, a material matter in the contract; the defendant relied on it, and was induced by it to consummate the contract; he has thereby suffered injury, and he has a right to set off or recoup his damages. It was not necessary to prove fraud, nor was it necessary that the defendant should go into equity for relief.—*Munroe v. Pritchett*, 16 Ala. 785 ; *S. C.*, 22 Ala. 501 ; *Blackman v. Johnson*, 35 Ala. 252 ; *Atwood's Adm'r v. Wright*, 29 Ala. 346 ; *Gibson v. Marquis*, 29 Ala. 668, and authorities there cited.

STONE, J.—The testimony tends strongly to show, that when the sale and conveyance of the disputed twenty-three acres of land were made to Garland Wood, or to him and his father, McClendon, the appellee, was in possession, claiming said land under his prior purchase. This constituted an adverse holding by him, which would render the conveyance to Garland Wood inoperative and void, as against him, McClendon; and would have furnished him a defense to an action at law brought by Garland Wood for the recovery of said lands.—*Hinton v. Nelms*, 13 Ala. 223 ; *Abercrombie v. Baldwin*, 15 Ala. 371 ; *Carlos v. Ansley*, 8 Ala. 902 ; *Doe, ex dem Farmer v. Eslava*, 11 Ala. 1044 ; 3 Wash. Real Property, 292, *et seq.; Abernathy v. Boazman*, 24 Ala. 192 ; *Harvey v. Carlisle*, 23 Ala. 638. It is thus shown that McClendon could have successfully defended an action brought by Garland Wood for the recovery of the said twenty-three acres. Was he bound to make the defense? Would such defense, if successfully made, have secured to him the full measure of his rights?

It is settled in this State, that if a vendor, in making sale of lands, either ignorantly, or by design, represent that the tract he is selling includes other more valuable lands, outside of the boundaries of the tract he sells, the defendant may have an abatement of the purchase-money, to the ex-

tent he is injured by the misrepresentation; and this defense he can make at law.—*Gibson v. Marquis*, 29 Ala. 668; *Munroe v. Pritchett*, 16 Ala. 786; *Atwood v. Wright*, 29 Ala. 346; *Blackman v. Johnson*, 35 Ala. 256; *Allen v. Kelly*, 34 Ala. 669, and authorities. This defense McClendon could have made, even if no sale of the north-west quarter had been made to Garland Wood, unless the peculiar facts of this case take it without the operation of the rule. The land described in the conveyance to McClendon, and the twenty-three acres pointed out as embraced within it, were alike the property of Wiley Wood, Charles F. Wood, and Wm. M. Wood. Wiley Wood alone designated the boundaries, and negotiated the sale. A title to said west half of the north-east quarter was conveyed to McClendon, and no other land was conveyed to him. An action at law could have been successfully prosecuted by the three Woods, against McClendon, for the recovery of said twenty-three acres; and to such suit, their deed made to Garland Wood would have opposed no bar. This precise question was so ruled in *Harvey v. Carlisle*, 23 Ala. 638. It results, therefore, that McClendon, by his purchase, acquired no title to the twenty-three acres.

If it be contended that, under the facts of this case, McClendon acquired an equity, by which he could have compelled a reformation of his deed, so as to make it embrace the lands pointed out by Wiley Wood, the answer is, first, that it is not shown by this record that the reformation would have been made. Chancery reforms contracts, so as to make them speak the mutual agreement of the parties, when the writing, by mistake, or fraud, fails to express such mutual agreement. It does not make contracts. When Wiley Wood was negotiating the sale to McClendon, he pointed out the twenty-three acres, as part and parcel of the west half of the north-east quarter of the section. He sold and conveyed only the west half of the north-east quarter. His mistake lay in his supposition, that the tract sold and conveyed embraced the twenty-three acres. To give to McClendon the eighty acres pointed out to him, it will be necessary to so shape it as to include fifty-seven acres of the west half of the north-east quarter, and twenty-three acres of the north-west quarter. This will leave detached, undisposed of, and the property of the Woods, twenty-three acres on the east side of the west half of the north-east quarter. The sale actually agreed on, and consummated by writing, was by numbers. Charles and William Wood, when they executed the deed, conveyed a specified eighty-acre tract—the west half of the north-east quarter. They did not convey the twenty-three acres. We are not informed by the record, and

cannot presume, that they authorized Wiley Wood to make the misrepresentation he did make. Now, while such misrepresentation, made by an agent to sell, would arm a purchaser with the right to set off, recoup, and, in many cases, with the right to rescind, it could not confer a right, as against Charles and William Wood, to have the contract so reformed as to embrace the twenty-three acres, unless they authorized or ratified such misrepresentation. As to them, the writing is the contract; and we have no evidence that they had any intention, other than that shown in the writing.—*Falls v. Gaither*, 9 Porter, 602; *Sanford v. Howard*, 29 Ala. 684; *Haden v. Tucker*, 38 Ala. 399.

In what we have said, we must not be understood as affirming that chancery would have reformed this contract, even if Wiley Wood had been sole vendor. We can not well perceive how a chancellor, from the evidence in this record, could infer that Wiley Wood intended to mutilate the tract of land, then owned by him and others, so as to give to McClendon the specific land pointed out. His intention, as far as we can gather it, was to sell the west half of the north-east quarter of the section. He believed it embraced the twenty-three acres, and he intended to sell said twenty-three acres as part of the named eighty. We have nothing from which to infer that he intended to sell and convey fifty-seven acres of one eighty, and twenty-three acres of an adjoining tract; thus cutting the remaining tract into irregular parcels, and leaving detached and undisposed of a fragment of twenty-three acres on the east side thereof.— See *Rumbly v. Stainton*, 24 Ala. 712; *Lockhart v. Cameron*, 29 Ala. 355.

In 1 Story's Eq. Jur. §§ 142-3, it is said: "In cases of mutual mistake, going to the essence of the contract, it is by no means necessary that there should be any presumption of fraud. On the contrary, equity will often relieve, however innocent the party may be.  *   *   *   So, if a person should execute a release to another party, upon the supposition, founded in a mistake, that a certain debt or annuity had been discharged; although parties were innocent, the release would be set aside, on the ground of mistake.  *   *   The same principle will apply to all other cases, where the parties mutually bargain for and upon the supposition of an existing right."

The testimony in this record tends strongly to show that the parties, when they contracted, believed the lands pointed out constituted the west half of the north-east quarter of the section. That such was their belief is rendered morally certain by the fact, that when they came to make the deed, they so described it. It is clear that, when Wiley Wood pointed

out the east (north-east?) corner of the land, he fell into an error. That was not the north-east corner. The true corner, according to the testimony of the surveyor, must have been about one hundred and twenty-seven yards east of that place. This, then, under the most favorable view which can be taken of the testimony—and we think it the true one—presents a clear case of mutual mistake. We do not decide, however, that if Wiley Wood alone had been interested in the sale, the deed would not have been reformed. Such decision is not necessary in this case. All we decide is, that from any thing shown in this record, the deed could not be reformed against Charles F. and William M. Wood.

But, even supposing that McClendon could have had the deed reformed, so as to secure to him the lands pointed out, it is by no means certain that he was required to incur the heavy expense involved in a chancery suit, to secure that which he had bargained for, and which he had failed to obtain by no fault of his.—See *Walton v. Bonham*, 24 Ala. 514.

The survey of the land in controversy, proven by the surveyor, does not appear to have been made according to section 953 of the Revised Code. No notice seems to have been given to McClendon, the "opposite party," that such survey would be made. Now, while the witness could testify of such survey, and, based thereon, could give his opinion of the boundaries; and could exhibit to the jury a map or diagram, explanatory of the testimony given by him, still such testimony does not rise to the dignity of *prima facie* proof.—See *Nolin v. Parmer*, 21 Ala. 66; *Daily v. Fountain*, 35 Ala. 26. We can not say this testimony was conclusive, or that there were no circumstances, the tendency of which was to weaken this evidence, or to show that the lines were correctly shown. However slight the testimony may have been, tending to show that the lines bounding the land were truly pointed out, we can not affirm that the evidence given by the surveyor was all that was before the jury bearing on that question. Slight though the testimony may have been, it was the right of the plaintiff to have it passed on by the jury.—*Jones v. Fort*, 36 Ala. 449; *Partridge v. Forsyth*, 29 Ala. 200. The seventh charge asked should have been given. It simply referred to the jury the inquiry, whether the land pointed out was embraced in the deed. The testimony not being of the class called conclusive, the plaintiff had the right to have it weighed by the jury. The remaining charges asked were rightly refused.

For the single error pointed out, the judgment of the Circuit Court is reversed, and the cause remanded.

BRICKELL, C. J., not sitting.